**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE,**
**COLUMBIA DIVISION**

| | | |
|---|---|---|
| **DANNY J. SEXTON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **CASE NO. 1:18-CV-00035** |
| | ) | **JUDGE CAMPBELL / FRENSLEY** |
| **OHIO VALLEY ELECTRIC** | ) | |
| **CORPORATION; and THE OHIO** | ) | |
| **VALLEY ELECTRIC** | ) | |
| **CORPORATION/** | ) | |
| **INDIANA-KENTUCKY ELECTRIC** | ) | |
| **CORPORATION LONG-TERM** | ) | |
| **DISABILITY PLAN,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## REPORT AND RECOMMENDATION

This matter is before the court on cross Motions for Judgment on the Administrative

Record. Docket Nos. 32, 34.  Both Defendant and Plaintiff have filed Supporting Memorandums

of Law. Docket Nos. 33, 35. Defendant and Plaintiff have also filed Responses in Opposition to

the Motions for Judgment on the Administrative Record. Docket Nos. 36, 37. Defendant filed a

Reply Memorandum in Support of their Motion for Judgment on the Administrative Record.

Docket No. 38.

## I. INTRODUCTION AND BACKGROUND

Plaintiff filed this action for relief pursuant to the Employee Retirement Income Security

Act of 1974 ("ERISA") and 29 U.S.C. §§ 1132(e)(1) and 1132(f). Docket No. 1, p. 1. Before

1

filing this action with the court, Plaintiff filed a claim for long-term disability benefits through The Ohio Valley Electric Corp./Indiana-Kentucky Electric Corp.'s Long-Term Disability Coverage Plan ("the Plan"). *Id.* at 1. The Plan was administered and managed by Prudential.[1] Prudential initially granted Plaintiff's application for long-term disability benefits and Plaintiff subsequently received benefits from December 3, 2015 through June 12, 2017. *Id* at 4. Prudential then denied Plaintiff long-term disability benefits because "Plaintiff was unable to establish that he was disabled based on the 'any occupation' standard which was the applicable standard under the Plan after 24 months of disability." Docket No. 33, p. 1. Plaintiff appealed this decision but the decision was upheld by Prudential. Docket No. 29-5, p. 8.

## II. FINDINGS OF FACT

The Administrative Record reveals the following findings of fact: Plaintiff began working for Indiana Kentucky Electric Corp. on April 4, 1978, as an Operating Supervisor. Docket No. 29-1, p. 5. Plaintiff stopped working on June 13, 2015. Docket No. 29-1, p. 11. Plaintiff had spinal fusion surgery on July 21, 2015. Docket No. 29-1, p. 53. On September 2, 2015, Plaintiff had a post-operative visit with Dr. Ian Rodway of Beacon Orthopedics where Dr. Rodway opined that Plaintiff could sit, stand, and walk intermittently for four hours. Docket No. 29-1, p. 75. Dr. Rodway further opined that Plaintiff could push/pull for two hours intermittently and lift up to 20 pounds. *Id*.

Plaintiff was examined by Dr. John Bartsch of Beacon Orthopedics. Docket No. 29-2, p.

---

[1] Both Plaintiff and Defendant agreed to dismiss all claims against Prudential without prejudice. Prudential was dismissed because the Disability Plan is a self funded plan and the Ohio Valley Corporation would be responsible for payment of benefits. Prudential is only the claims administrator for the plan. Docket No. 12, pp. 1-2.

67. Dr. Bartsch stated that Plaintiff described his pain to a 7/10 in severity and his symptoms worsen with sitting, walking, weight bearing, and bending. *Id.* Dr. Bartsch noted that Plaintiff's symptoms improved with lying down and medication. *Id*. Dr. Bartsch prescribed Plaintiff Robaxin, Vicodin and an injection to help control pain. *Id.*

Plaintiff applied for disability benefits on October 21, 2015. Docket No. 29-1, p. 12. Plaintiff was notified that his Long-Term Disability claim was approved on November 6, 2015. Docket No. 29-4, p. 120. The letter stated that Plaintiff's coverage was effective from December 3, 2015 through March 31, 2016. *Id.* The letter outlined what Plaintiff needed to do in order to receive benefits and included the plan's definition of disability, stating:

> You must meet the plan's definition of disability to receive LTD benefits. "Disability" is defined differently for the first two years of your disability as compared to disabilities that continue beyond two years.
>
> For the initial 24-month period from the date of disability, "disability" is defined as an illness or injury that requires the regular treatment of a duly qualified physician and that may reasonably be expected to prevent you from performing the material duties of your own occupation with AEP.
>
> After the first 24 months following your date of disability, "disability" is defined as an illness or injury that requires the regular treatment of a duly qualified physician and that may reasonably be expected to prevent you from performing the duties of any occupation for which you are reasonably qualified by your education, training and experience. So long as you continue to meet the requirements of this "two-year test," you will continue to be considered disabled.

Docket No. 29-4, pp. 122-123.

After Prudential awarded Plaintiff disability benefits, Plaintiff received treatment from various medical professionals. Plaintiff was treated by Dr. Walls from Paradigm Pain & Spine

Consultants on December 18, 2015; January 6, 2016; March 3, 2016; March 16, 2016; March 30, 2016; and May 11, 2016. Docket No. 29-1, pp. 133-136; Docket No. 29-2, pp. 1-2, 118-119, 135-136; Docket No. 29-3, pp. 5-7, 23. Plaintiff was treated for postlaminectomy syndrome, radioculopathy of the lumbar region, and pain management. *Id.*

Plaintiff also received treatment from Dr. Christopher Leagre from St. Vincent Indianapolis Hospital in October of 2014 and in September of 2017. Docket No. 29-2, pp. 110-112. Plaintiff was treated for trigeminal neuralgia which he suffered from since 1997. *Id.*

Plaintiff received treatment from Sarah Trent, a nurse with Comprehensive Pain Specialists in Columbia Tennessee, on December 5, 2016. Docket No. 29-2, pp. 75-80. Plaintiff saw Ms. Trent for pain management. *Id.* Plaintiff was given Percocet and Amrix to help deal with his pain in December. *Id.* On January 31, 2017, Plaintiff went back to Comprehensive Pain Specialists and was treated by John Garret, an Advanced Practice Nurse. Docket No. 29-4, pp. 50-51. Plaintiff was given a higher dose of Percocet. *Id.*

Plaintiff was evaluated by Dr. Jawaid Kamal on October 28, 2016. Docket No. 29-4, pp. 53-54. Dr. Kamal opined that Plaintiff reported his pain to be 8/10 on a pain scale. *Id.* Dr. Kamal also referred Plaintiff for a pain management evaluation. *Id.*

Plaintiff was awarded disability benefits from the Social Security Administration on June 7, 2016. Docket No. 29-3, p. 42. The Social Security Administration found that Plaintiff had become disabled on December 14, 2014, and benefits were awarded effective June 2015. *Id.*

On December 15, 2016, Prudential wrote a letter to Plaintiff stating that they needed additional information to see if Plaintiff qualified as disabled under the Plan's "any occupation"standard.  Docket No. 29-4, pp. 129-130.

Prudential also wrote Plaintiff a letter on February 13, 2017 requesting medical records from Comprehensive Pain Specialists from December 1, 2016 and completion of the Capacity Questionnaire Request Form. Docket No. 29-5, pp. 4-5.

In a letter dated March 28, 2017, Prudential terminated Plaintiff's LTD benefits claim effective June 13, 2019. Docket No. 29-5, pp. 8-11. Prudential explained the reasoning for terminating Plaintiff's claim for long-term disability benefits, stating:

> You stopped working as an Operating Supervisor after June 13, 2015 due to your spondyloisthesis. Medical information received from your treating physicians confirmed that due to your conditions you were unable to perform the material and substantial duties of you own occupation as an operating supervisor.
>
> We have reviewed the medical records in file from Ian Rodway, MD, John Bartsch, MD, Michael Walls, MD, and Comprehensive Pain Specialists.
>
> An Attending Physician Statement completed by Dr. Rodway dated October 7, 2015 indicated you underwent spinal fusion surgery on July 21, 2015. Dr. Rodway provided an estimated return to work date of November 30, 2015.
>
> Office notes completed by Dr. Bartsch dated October 22, 2015 indicate you reported left sided lower back pain. Dr. Bartsch recommended an injection as well as medication to control the pain.
>
> Office notes completed by Comprehensive Pain Specialists dated December 5, 2016 noted reported low back pain, radiating down your left lower extremities. You were reported to experience chronic neck pain. Examination results noted severely limited range of motion, moderate pain induced. You were assessed with chronic pain, postlaminectomy syndrome, lumbago, neck pain, and pain in the right shoulder. You were advised to begin Percocet, and return to the office in four weeks.
>
> Your file has been reviewed by our clinical team. A clinical review of your file completed on February 27, 2017 indicated your pain

5

has persisted since surgery, but not significantly worsened. A
review of your file noted, it was reasonable that you remained with
full time work capacity given the opportunity to alternate sitting
and standing at will, occasional walking, and occasional lifting and
carrying up to twenty pounds. You were noted to have restrictions
and limitations of no overhead reaching or lifting. In addition, you
were noted to be restricted from climbing, twisting, bending, and
stooping. You were noted to be capable of performing frequent
reaching at desk level, and frequent bilateral fingering and
handling.

Taking your current restrictions and limitations into consideration,
as well as your education and employment history, it was
determined that you could be gainfully employed as a Production
Scheduler and Cost Estimator. These jobs have an average hourly
wage of $28.75, which is greater than your gainful wage of $25.57.
Since you do not meet the eligibility requirements for beneifts
under the any occupation definition of disability, as stated above,
your claim for LTD benefits has been closed effective June, 13,
2017.

Docket No. 29-5, p. 9.

Plaintiff appealed Prudential's decision to terminate his claim. On September 21, 2017,

Plaintiff wrote a letter arguing that he has a particularly strong disability claim based on the

Physical Residual Functional Capacity Questionnaire filled out by Dr. Fitz and a video of

Plaintiff taken on May 19, 2017. Docket No. 29-3, pp. 74-92.

Plaintiff supplemented the record for appeal on November 3, 2017. Plaintiff included: (1)

records from Dr. Fitz; (2) records from Dr. Leagre; and (3) earlier records from Dr. Payner.

Docket No. 29-4, p. 70.

Plaintiff and Prudential scheduled an independent medical examination for November

17, 2017 with Dr. John Nwofia. Docket No. 29-4, p. 69.  Plaintiff then cancelled the medical

examination the appointment was never rescheduled. Docket No. 29-5, p. 22. Plaintiff further

supplemented the record for appeal on January 17, 2018 with records from Dr. Englot. Docket

No. 29-4, p. 75.


### III. STANDARD OF REVIEW

When an ERISA Plan expressly provides discretion to the administrator in making

eligibility decisions, the reviewing Court employs the arbitrary and capricious standard of review.

*See Williams v. Int'l Paper Co.*, 227 F.3d 706, 711 (6th Cir. 2000), *citing Firestone Tire &*

*Rubber Co. v. Bruch*, 489 U.S. 101, 110-12 (1989). In the case at hand, the benefits plan

specifically states:

> OVEC has retained the authority, responsibility and discretion to
> determine eligibility to participate in the LTD Plan and has
> appointed the System Office Human Resources Department to
> make initial determinations of eligibility and an internal OVEC
> LTD Plan Appeal Committee to consider appeals of adverse
> eligibility determinations made by the System Office Human
> Resources Department.

Docket No. 33-1, p. 19.

The arbitrary and capricious standard is the "least demanding form of judicial review of

administrative action." *McDonald v. Western-Southern Life Ins. Co.*, 347 F.3d 161, 169 (6th Cir.

2003)(internal citations and quotations omitted). A decision is not arbitrary and capricious "when

it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome."

*Williams*, 227 F.3d at 712 (internal quotation omitted). An administrator's decision regarding

eligibility for benefits is not arbitrary and capricious if it is "rational in light of the plan's

provisions." *Miller v. Metropolitan Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991).

In reviewing an administrator's decision under the arbitrary and capricious standard, the

7

district court is strictly limited to the record before the administrator at the time the administrator made his decision. *Killian v. Health Source Provident Adm'r, Inc.,* 152 F.3d 514, 522 (6th Cir. 1998).

In determining whether Defendant's decision was arbitrary and capricious, the Court must consider whether the administrator was operating under a conflict of interest; if so, that conflict must be weighed as a factor in determining whether the administrator acted arbitrarily and capriciously. *Firestone*, 489 U.S. at 115; *Univ. Hosp. of Cleveland v. Emerson Elec. C.*, 202 F.3d 829, 846 (6th Cir. 2000).

In reviewing whether or not a plan administrator's decision was arbitrary and capricious, "the ultimate issue in an ERISA denial of benefits case is not whether discrete acts by the plan administrator are arbitrary and capricious but whether its ultimate decision denying benefits was arbitrary and capricious." *Spangler v. Lockheed Martin Energy Sys.*, 313 F.3d 356, 362 (6th Cir. 2002).

## IV. LAW AND ANALYSIS

The issues raised by each party in their cross motions are as follows: (1) the quantity and quality of objective medical evidence submitted by Plaintiff; (2) Prudential's obligation to conduct an independent medical examination of Plaintiff; (3) Plaintiff's ability to be re-employed in gainful employment; (4) Prudential's evaluation of the Social Security's determination of disability; and (5) evaluation of video evidence submitted by plaintiff. Docket Nos. 33, 35.

## 1. Quantity and Quality of Objective Medical Evidence

Defendant argues that "Prudential's decision to terminate Plaintiff's disability benefits is supported by substantial evidence in the record and should therefore be upheld." Docket No. 33,

8

p. 14. Defendant specifically argues that Prudential evaluated medical evidence from multiple doctors and a nurse that treated Plaintiff, as well as Dr. Kerstman who reviewed the evidence. *Id.* at 14-15. Defendant maintains that "none of the medical professionals identified objective medical evidence that supported Plaintiff's alleged restrictions and limitations and his claim that he is unable to perform the duties of any occupation." *Id* at 15. Defendant argues that Plaintiff "did not present objective medical evidence of disability and failed to meet his burden of proof under the Plan." Docket No. 36, p. 3. Specifically, Defendant contends that the Residual Functional Capacity Questionnaire from Dr. Fitz does not qualify as objective medical evidence required by the plan. *Id.*

Plaintiff argues that the quantity and quality of medical proof shows that Plaintiff remains disabled. Docket No. 35, p.7. Specifically, Plaintiff argues that the residual functional capacity questionnaire completed by Dr. Robert M. Fitz is convincing evidence that Prudential did not properly evaluate. *Id.* at 7-9.

In regard to objective medical evidence and treating physicians, the Plan states:

> Objective medical evidence must be supplied at your expense supporting your case for disability. A letter from your treating physician merely stating that you are unable to work without any supporting information will not be considered as conclusive proof of your disability.

Docket No. 33-1, p. 18.

As demonstrated above, the Plaintiff has the burden of proof to provide objective medical evidence to support his claim of disability.

The Residual Functional Capacity Questionnaire completed by Dr. Fitz, as summarized by Plaintiff, states:

9

- Dr. Fitz has been treating Mr. Sexton at least quarterly for the past 6 years.
- He has post laminectomy syndrome and his prognosis is guarded.
- His impairments have lasted and can be expected to last at least 12 months.He is not a malingerer, and his impairments are reasonably consistent with the symptoms and functional limitations described in this evaluation.
- Mr. Sexton's symptoms include back pain, chronic lumbar and cervical region pain, fatigue, dizziness, and muscle spasms.
- His cervical pain is described as 7/10 intensity; sharp midline cervical spine pain; constant; and aggravated by neck range of motion.
- Mr. Sexton's back pain is characterized by low back pain; constant; achy pain with intermittent sharp pain; 7/10 intensity and aggravated by postural changes.
- Clinical findings and objective signs are identified as tender to palpation over midline cervical and lumbar spine. He walks with a cane. He has 2+ biceps and triceps reflexes and 1+ patella able reflexion.
- His treatment consists of physical therapy, prescription medication, injections, and surgeries. Mr. Sexton's surgical history consist of L2 laminectomy, right L2-L3 facetectomy, L2-L3 spinal fusion in July 2015; prior L3-S1 lumbar fusion; and C4-C6 cervical fusion in January 2015
- During a typical work day, Mr. Sexton's experience of pain or other symptoms are constantly severe enough to interfere with attention and concentration needed to perform even simple work tasks
- He is incapable of even low stress jobs.
- As a result of Mr. Sexton's functional limitations, if he were placed in a competitive work situation he would only be able to walk less than 1 city block without rest or severe pain.
- At one time he can sit for about 10 minutes before needing to get up; he can stand for 10 minutes before needing to sit down or walk around.
- In a total 8 hour work day, he can sit or stand/walk for less than 2 hours with normal breaks
- Mr. Sexton does require periods of walking around during an 8 hour working day approximately every 10 minutes for about 5 minutes at a time.

10

- He does require a position that permits shifting positions at will from sitting, standing or walking.
- Mr. Sexton will sometimes need to take unscheduled breaks during an 8 hour work day.
- While engaged in occasional standing/walking, Mr. Sexton must use a cane.
- In a competitive work situation, Mr. Sexton can occasionally lift and carry less than 10 lbs. and should never lift and carry 10 lbs. or more.
- He can occasionally look down, turn head right or left, and look up.
- Mr. Sexton should never twist, stoop, crouch, climb ladders, and should rarely climb stairs.
- He does have significant limitations with reaching, handling, or fingering. He can use his hands to grasp turn or twist objects 33% of the time; use his fingers for fine manipulations 62% of the time; and use his arms for reaching 66% of the time.
- His impairments are likely to produce good days and bad days. On average Mr. Sexton is likely to be absent from work more than 4 days per month as a result of the impairments or treatments.

Docket No. 29-3, p. 78-79.

In an Independent Medical Evaluation completed by Dr. Eric Kerstman, Dr. Kerstman

was asked the following question:

> Claimant's physician, Dr. Fitz, provided a 5/22/17 Capacity Questionnaire stating symptoms include back pain, cervical pain, fatigue, dizziness, and muscle spasm. Pain is constantly severe enough to interfere with attention and concentration needed for even simple work tasks. Incapable of even low stress jobs. Able to walk less than 1 city block without rest or severe pain. Can sit 10 minutes before needing to get up, can stand 10 minutes before needing to sit or walk around. In 8-hour day can sit or stand walk than 2 hours. Must shift position at will. Sometimes needs unscheduled breaks. Must use a cane. Can lever lift 10 or more lbs. Can occasionally lift less than 10 lbs. Can occasionally look down, turn head right or left or look up. Significant limitation with reaching fingering, or handling. Are these restrictions / limitations medically necessary? Please provide a detailed explanation and

point to the specific documentation in support of your opinion.

Docket No. 29-4 p. 101.

Dr. Kerstman answered, stating:

> Based on my review of the provided records, the above noted restrictions and limitations are not supported as medically necessary. The 5/22/17 Physical Residual Functional Capacity Questionnaire completed by Dr. Robert Fitz M.D. does not include any reference to objective findings of significant abnormalities on physical examination or diagnostic testing to support the claimant's subjectively reported symptoms, or to support the restrictions and limitations outlined in the questionnaire.
>
> In addition, the medical records provided for my review do not contain documentation of any current or recent significant abnormalities on physical examination or diagnostic testing to support impairment, restrictions, or limitations.

*Id.*

While Dr. Fitz's Residual Functional Capacity Questionnaire found that Plaintiff had many severe limitations, the medical evaluation completed by Dr. Kerstman found that the Residual Functional Capacity Questionnaire was not a persuasive piece of evidence because it lacked objective medical evidence to support Plaintiff's claim of disability. *Id.*

A plan administrator's decision to deny benefits can not be considered arbitrary and capricious when a claimant fails to submit sufficient objective evidence to support a claim of disability as defined in the requisite plan. *Oody v. Kimberly-Clark Corp. Pension Plan,* 215 F. App'x 447, 452 (6th Cir. 2007). As demonstrated above, the plan required Plaintiff to supply objective medical evidence in support of their claim for disability. Furthermore, the plan made clear that a letter from a treating physician that was not supported with objective medical evidence will not be considered "conclusive proof of disability." *Id.*

12

In *Boone v. Liberty Life Insurance Co.*, the Sixth Circuit held that the Plan Administrator did not "arbitrarily disregard" the conclusions of Plaintiff's doctors, rather "it chose not to credit them because they were not supported by objective medical evidence which is what the plan requires." 161 F. App'x 469, 473 (6th Cir. 2005). Similarly, Prudential did not credit the Residual Functional Capacity Questionnaire from Dr. Fitz because it was not supported with objective medical evidence. In *McDonald v. Western-Southern Life Ins. Co.*, the Sixth Circuit held "when a plan administrator chooses to rely upon the medical opinion of one doctor over that of another in determining whether a claimant is entitled to ERISA benefits, the plan administrator's decision cannot be said to have been arbitrary and capricious because it would be possible to offer a reasoned explanation, based upon the evidence, for the plan administrator's decision." 347 F.3d 161, 169 (6th Cir. 2003) (internal citations omitted). In the case at hand, Prudential chose to rely on the "MES" statement from Dr. Kerstman over the Residual Functional Capacity Questionnaire from Dr. Fitz because  Dr. Fitz did not support his findings with objective medical evidence. Accordingly, Prudential's decision to accord little weight to the residual functional capacity questionnaire from Dr. Fitz was not arbitrary and capricious.

**2.  Prudential's Obligation to Conduct an Independent Medical Examination of Plaintiff**

Defendant argues that "Prudential had no obligation to obtain an independent medical examination and properly relied upon the medical records review of Dr. Eric Kerstman." Docket No. 36, p. 5.  Defendant further maintains that Plaintiff failed to request a second appeal where he had an opportunity to request an independent medical examiner even though Defendant advised Plaintiff that he had the right to do so in their final determination letter. *Id.* While Plaintiff argues that he cancelled his initial appointment due to an impending brain surgery,

Defendant maintains that no evidence of Plaintiff's brain surgery was ever presented. *Id.* Defendant argues that the file review conducted by Dr. Kerstman was completely appropriate. Docket No. 36, p. 5. Defendant maintains that Dr. Kerstman's review did not contradict objective findings by Plaintiff's treating physicians; Dr. Kerstman simply found that there was not enough objective medical evidence to support Plaintiff's claim for disability. *Id.* at 4-5. Defendant argues that Dr. Kerstman's decision was aligned with the Plan's definition of disability and was not arbitrary and capricious. *Id.* at 5. Defendant maintains that it was proper to conduct only a file review because the plan places the burden on Plaintiff to provide objective medical evidence. *Id.*

Plaintiff argues that Prudential terminated Plaintiff's long-term disability benefits without properly exercising its right to have Plaintiff evaluated by a doctor. Docket No. 35, p. 11. Plaintiff contends that Prudential scheduled an in person examination by a doctor for Plaintiff but that appointment was cancelled due to Plaintiff's impending brain surgery and never rescheduled by Prudential. *Id.* Plaintiff further argues that Prudential's failure to have Plaintiff examined by a doctor in person casts doubt on Prudential's decision making process. *Id.* Plaintiff argues that "what is significant is not why Mr. Sexton asked for the IME to be rescheduled; but rather that Prudential never chose to re-schedule it, and it never occurred." *Id.* at 13.

In regard to independent medical reviews, the plan states:

> If the adverse determination on your claim was based on a medical judgment, the OVEC LTD Plan Appeal Committee or Prudential, as appropriate, will ensure that a health professional is consulted with appropriate training and experience. The health care professional consulted for the appeal will not be the professional (if any) consulted during the prior determination . . .even if the advice was not relied upon in making the benefit determination.

Docket No. 33-1, p. 21-22.

14

As documented above, the Plan does not state that the Plan Administrator is required to provide Plaintiff with an independent medical examination. Prudential did however, schedule an examination for Plaintiff that Plaintiff subsequently cancelled. *Id.* Once Plaintiff cancelled this examination, Prudential hired Dr. Kerstman to conduct an independent medical review of Plaintiff's medical records. The final termination letter given to Plaintiff states the following in regard to Plaintiff's opportunity to appeal the decision:

> Like first level appeals, the review of your second level appeal will afford no deference to prior determinations and will be conducted by someone other than individuals involved in the prior determinations or subordinates of such individuals. Also, if the adverse determination on your claim was based on a medical judgment, Prudential will consult with a health professional with appropriate training and experience. The health care professional consulted for the second level appeal will not be the same professional(s) consulted during any prior determinations or a subordinate of such professional. Prudential will also, upon your written request, identify medical or vocational experts whose advice was obtained on behalf of the plan in connection with the adverse benefit determination being appealed, even if the advice was not relied upon in making the benefit determination.

Docket No. 29-5, p. 32.

As shown above in the final termination letter, Prudential afforded Plaintiff the opportunity to appeal the decision and  have a second opportunity to receive an independent medical evaluation. *Id.* Plaintiff did not request an appeal and instead filed this action with the court. Accordingly, Defendant's decision to have Plaintiff's file reviewed by Dr. Kerstman instead of rescheduling an in person medical examination was not arbitrary and capricious.

### 3. Plaintiff's Ability to Pursue Gainful Employment

Defendant argues that Prudential made its finding on Plaintiff's ability to obtain gainful

employment based on the lack of evidence in the record that would demonstrate Plaintiff is unable to perform material duties of his job or other gainful occupations. Docket No. 36, p. 6.

Plaintiff argues that he can not be re-employed at any occupation with the appropriate gainful wage. Docket No. 35, p. 12. Specifically, Plaintiff argues that with the combination of his physical ailments, age, work experience, and education level it is hard to imagine that he could find new employment that would pay him as much as $53,184.00 per year. *Id.* at 12-13. Plaintiff further argues that "the two hypothetical jobs offered up by Prudential in support of its termination of benefits – Production Scheduler and Cost Estimator – are not compelling under the circumstances." *Id.* at 13. Plaintiff further argues that Prudential's adjuster states that it is unlikely that Plaintiff will return to anything greater than seated work. *Id.* Plaintiff contends that the physical limitations documented by Dr. Fitz in the residual functional capacity questionnaire show that "Plaintiff plainly lacks the education, experience and modern computer skills required for such positions." *Id.* Plaintiff further argues that "ERISA case law makes clear that not just any hypothetical job will suffice; the analysis must be reasonable."*Id.*

When a plan administrator is evaluating a claimant's ability to pursue gainful employment they must not construe "any occupation" to mean that a claimant must be:

> utterly helpless to be considered disabled and nominal employment, such as selling peanuts or pencils which would yield only a pittance, does not constitute a "business or occupation." Instead, a claimant's entitlement to payments based on a claim of "total disability" must be based on a claimant's ability to pursue gainful employment in light of all the circumstances.

*Vanderklok v. Provident Life & Accident Ins.Co,*956 F.2d 610, 614 (6th Cir. 1992) (internal citations omitted).

The Plan states that after 24 months of receiving disability benefits, Plaintiff's claim is re-

evaluated under the "any occupation" standard where Prudential determines if Plaintiff can pursue any gainful employment. Docket No. 33-1, p. 8. The Plan describes gainful employment as 60% of claimant's pre-disability base monthly earnings. *Id.* at 15. In order to determine Plaintiff's ability to pursue gainful employment, Prudential assessed the objective medical evidence submitted by Plaintiff. Prudential's initial denial letter, dated March 28, 2017, stated:

> We have reviewed the medical records in file from Ian Rodway, M.D., John Bartsch, MD., Michael Walls, MD., and Comprehensive Pain Specialists.
>
> An attending Physician Statement completed by Dr. Rodway dated October 7, 2015 indicated you underwent spinal fusion surgery on July 21, 2015. Dr. Rodway provided an estimated return to work date of November 30, 2015.
>
> Office ntoes completed by Dr. Bartsch dated October 22, 2015 indicates you reported left sided lower back pain. Dr. Bartsch recommended an injection as well as medication to control the pain.
>
> Office notes completed by Comprehensive Pain Specialists dated December 5, 2016 noted reported low back pain, radiating down your left lower extremities. You were reported to experience chronic neck pain. Examination results noted severely limited range of motion, moderate pain induced. You were assessed with chronic pain, postlaminectomy syndrome, lumbago, neck pain, and pain in the right shoulder. You were advised to begin Percocet, and return to the office in four weeks.
>
> Your file has been reviewed by our clinical team. A clinical review of your file completed on February 27, 2017 indicated your pain has persisted since surgery but not significantly worsened A review of your file noted, it was reasonable that you remained with full time work capacity given the opportunity to alternate sitting and standing at will, occasional walking, and occasional lifting and carrying up to twenty pounds. You were noted to have restrictions and limitations of no overhead reaching or lifting. In addition you were noted to be restricted from climbing, twisting, bending and stooping. You were noted to be capable of performing frequent

17

reaching at desk level, and frequent bilateral fingering and
handling.

Taking your current restrictions and limitations into consideration
as well as your education and employment history, it was
determined that you could be gainfully employed as a Production
Scheduler and Cost Estimator. These jobs have an average hourly
wage of $28.75, which is greater than your gainful wage of $25.57.

Docket No. 29-5, p. 9.

As demonstrated above, Prudential assessed Plaintiff's ability to pursue gainful

employment "in light of all circumstances" by evaluating the objective medical evidence in

Plaintiff's records. Prudential found, based on the advice of a vocational consultant, that Plaintiff

had the capacity to perform the jobs of a Production Scheduler and Cost Estimator, both of which

would provide him with earnings greater than his calculated gainful wage. *Id.* Prudential

supported its decision with objective medical evidence. *Id.* Accordingly, Prudential did not act

arbitrarily and capriciously in its determination that Plaintiff has the ability to pursue gainful

employment.

While Plaintiff argues that Prudential incorrectly assessed his ability to obtain gainful

employment, the primary piece of evidence Plaintiff uses to support this assertion is the Residual

Functional Capacity Questionnaire from Dr. Fitz. As demonstrated in the first statement of error,

Defendant's decision to discount Dr. Fitz's questionnaire was not arbitrary and capricious.

**4. Social Security Administration's Award of Disability Benefits**

Plaintiff was granted Social Security Disability benefits on June 7, 2016. Docket No. 29-

3, p. 42. The Social Security Administration found that Plaintiff became disabled on December

14, 2014. *Id.*

18

Defendant argues that "Plaintiff's award of Social Security Disability Benefits is irrelevant to Prudential's inquiry under the plan." Docket No. 33, pp. 18-19. Specifically, Defendant argues that the Social Security Administration's disability award is not binding on Prudential because the Social Security Administration award letter does not state the basis for the finding of disability; therefore, "it is not proper to assume that the SSA necessarily found that Plaintiff could not perform 'any occupation' within the meaning of the plan." *Id*. Defendant further argues that there are "critical differences between the Social Security disability program and ERISA benefit plans." *Id.* at 19. Defendant argues that these differences include how the "SSA accords 'special deference' to the opinions of treating physicians and measures the claimant's condition against a uniform set of federal criteria" and how "in an SSA proceeding, the burden is on the government to show that the applicant can work." *Id.* Defendant further argues that Prudential gave an explanation as to why the SSA award was not controlling. *Id.* at 20. Defendant maintains that Prudential and the SSA had a different record before them. *Id.* Defendant contends that "the SSA award letter contains absolutely no discussion of the evidence upon which it relied in awarding benefits nor any mention of the definition and standards by which it evaluated the evidence." Docket No. 38, p. 5.

Plaintiff argues that the Social Security Administration's award of disability is persuasive evidence. Docket No. 35, p.14. Specifically, Plaintiff states that the "SSD award should have been given considerable weight in favor of finding ongoing disability here." *Id.* Plaintiff argues that the Sixth Circuit has reversed a claims administrator's decision to deny long-term disability benefits when the administrator ignored a finding of disability by the Social Security Administration and reaped the financial benefits and Prudential aided Plaintiff in obtaining

19

Social Security Disability benefits by referring him to Allsup for the purpose of obtaining Social

Security Disability Benefits. *Id.* at 14-15. Plaintiff argues that "Prudential stood ready to 'cherry

pick' for the financial advantage of Defendants." *Id.* at 15. Plaintiff argues that *Bennett v.*

*Kemper,* is persuasive in this situation because "Prudential specifically referred Mr. Sexton to

Allsup to garner SSD benefits." 514 F. 3d 547 (6th Cir. 2008); Docket No. 37, p.14-15.

A determination of disability rendered by the Social Security Administration does not

automatically mean that same person is entitled to benefits under an ERISA plan when the

Social Security Administration and an ERISA plan use different criteria for an evaluation of

disability. *Whitaker v. Hartford*, 404.F.3d 947, 949, 121 F. App'x. 86 (6th Cir. 2005). In *Bennet*

*v. Kemper Not. Services, Inc.,* the Sixth Circuit held:

> if the plan administrator (1) encourages the applicant to apply for
> Social Security disability payments; (2) financially benefits from
> the applicant's receipt of Social Security; and then (3) fails to
> explain why it is taking a position different from the SSA on the
> question of disability, the reviewing court should weigh this in
> favor of a finding that the decision was arbitrary or capricious.

514 F.3d 547, 554 (6th Cir. 2008).

In a letter dated January 29, 2018, Prudential explained why it took a position that was

different from the Social Security Administration. The letter stated:

> We have noted that he was approved for Social Security Disability
> Benefits and we have taken this into consideration. However,
> please note that the Social Security Administration (SSA) must
> make their determinations based on the information available to
> them and their rules and guidelines, and we must render our
> decisions based on the information available in his LTD file and
> the provisions of the LTD Group Policy. As such, the approval of
> one type of benefit does not mean that another type of disability
> benefit will be approved; nor does the denial of one type of benefit
> mean that another type of disability will be denied. In conjunction

> with the review of your LTD claim, a review of his filed was completed by a physician specialist, as outlined above. It does not appear that the SSA had this information when rendering their determination.

Docket No. 29-5, p. 32.

As demonstrated in the letter above, Prudential explained that it was taking a different position from the Social Security Administration. *Id.* Prudential stated that it is operating under different rules and guidelines from the SSA and that they had different pieces of evidence to evaluate. *Id.* Accordingly, Defendant's decision to give great weight to the Social Security Administration's determination of disability was not arbitrary and capricious.

## 5. Evaluation of Video Evidence

Defendant argues that the video submitted by Plaintiff "contains no objective medical evidence of disability as required by the Plan or other input from a medical professional and, therefore, is of no probative value." Docket No. 36, p. 4.

Plaintiff argues that the video evidence depicting Plaintiff during the relevant time frame is compelling. Docket No. 35, p. 16. Plaintiff asks the court to review the video in its entirety. *Id.* Plaintiff argues that Prudential did not make any effort to review the video and that the video would have allowed Dr. Kerstman to actually "see" Plaintiff. *Id.*

After viewing the video submitted by Plaintiff, the undersigned finds that Defendant did not act arbitrarily and capriciously when declining to count the video as objective medical evidence. The video simply shows Plaintiff being asked a series of questions at his attorney's office. Docket No. 29-4, p. 57. Plaintiff did not introduce any piece of objective medical evidence in the video. *Id.*

## V. RECOMMENDATION

For the reasons discussed above, the undersigned finds that Defendant's decision to terminate Plaintiff's long-term disability benefits was not arbitrary and capricious. Defendant demonstrated that it engaged in a deliberate and principled process to reach its decision. Therefore, the undersigned recommends that Defendant's Motion for Judgment on the Administrative Record be GRANTED and Plaintiff's Motion for Judgment on the Administrative Record be DENIED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.


_____
JEFFERY S. FRENSLEY
United States Magistrate Judge